**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 17-60847-CIV-DIMITROULEAS

CHANEL, INC.,

          Plaintiff,

v.

THE INDIVIDUAL, PARTNERSHIP, OR
UNINCORPORATED ASSOCIATION
d/b/a 2015CHINASALE.COM, *et al.*,

          Defendant.

_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**
**AGAINST DEFENDANT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

      Plaintiff, Chanel, Inc. ("Plaintiff" or "Chanel"), by and through its undersigned counsel, hereby moves this Honorable Court for an entry of final default judgment against Defendant, the Individual, Partnership, or Unincorporated Association doing business as the domain names identified on Schedule "A" attached hereto (collectively "Defendant").[1] In support thereof, Chanel submits the following Memorandum of Law.

**I.**      **INTRODUCTION**

      Chanel initiated this action against Defendant through the filing of its Complaint for trademark counterfeiting and infringement (Count I), false designation of origin (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). Defendant is in default, and the prerequisites for a default judgment have been met. As relief, Chanel seeks default judgment finding Defendant liable on all counts of Chanel's

---

[1] Prior to filing the instant Motion, Chanel filed its Notice of Identification of Additional Aliases Operated By Defendant (the "Notice of Additional Aliases") [DE 27]. The additional alias domains names identified in Schedule "A" to the Notice of Additional Aliases, [DE 27 at p. 2], are encompassed in Schedule "A" attached hereto. (See Declaration of Stephen M. Gaffigan in Support of Motion for Entry of Final Default Judgment Against Defendant ["Gaffigan Decl. in Support of FDJ"] ¶ 1, n.1, filed herewith.)

Complaint. Chanel prays such judgment includes the entry of a permanent injunction and an award of statutory damage to Chanel for Defendant's willful counterfeiting pursuant to 15 U.S.C. § 1117(c). Chanel also requests the Court cancel, or at Chanel's election, transfer the domain names at issue to Chanel to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Chanel's trademarks and infringing upon Chanel's rights.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights.

Chanel is a corporation organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. (Compl. ¶ 4.) Chanel operates boutiques throughout the world, including within this district. (Id.; see also Declaration of Lynnette Oka in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Oka Decl."] ¶¶ 5-6, [DE 6-1], incorporated herein by reference.)[2] Chanel is, in part, engaged in the business of manufacturing and distributing throughout the world a variety of high quality goods. (See id. at ¶¶ 5-7.)

Chanel is the owner of all rights in and to the federally registered trademarks identified in Paragraph 4 of the Oka Declaration (the "Chanel Marks"), and all rights therein, which are used in connection with the manufacture and distribution of high quality goods in the categories identified therein. (See Oka Decl. ¶¶ 4-5; see also United States Trademark Registrations of the

---

[2] On May 1, 2017, Chanel filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ("Application for Temporary Restraining Order") together with supporting declarations and exhibits, [DE 6], which are incorporated herein by reference.

Chanel Marks at issue, attached as Comp. Ex. 1 to the Complaint [DE 1-1], incorporated herein by reference.)

The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. (Oka Decl. ¶¶ 7-8.) Furthermore, Chanel has extensively used, advertised, and promoted the Chanel Marks in the United States in association with its goods, and has carefully monitored and policed the use of the Chanel Marks. (See id. at ¶¶ 5-7.) As a result of Chanel's efforts, members of the consuming public readily identify products bearing the Chanel Marks as being quality merchandise sponsored and approved by Chanel. (Id.) Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of high quality goods.

**B.      Defendant's Infringing Acts.**

As alleged by Chanel, admitted by default, and established by the evidence submitted herewith, Defendant owns, operates, or controls various fully interactive, commercial Internet websites and supporting domain names operating under the individual, partnership, and/or business association names identified on Schedule "A" hereto (the "Subject Domain Names"). As such, Defendant is the active, conscious, and dominant force behind the promotion, advertisement, distribution, offering for sale, and/or sale of goods using trademarks which are exact copies of the Chanel Marks (the "Counterfeit Goods"). (See Compl. ¶¶ 7-16, 25-29, 38-40; see also Oka Decl. ¶¶ 9-12; Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Gaffigan Decl."] ¶¶ 2-3 and Comp. Ex. 1 thereto [DE 6-3 through 6-4], incorporated herein by reference; Declaration of Lynnette Oka in Support of Plaintiff's Notice of Identification of

Additional Aliases Operated by Defendant[3] ["Oka Decl. in Support of Notice of Additional Aliases"] ¶¶ 6-8 [DE 27-1], incorporated herein by reference; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Notice of Identification of Additional Aliases Operated by Defendant ["Gaffigan Decl. in Support of Notice of Additional Aliases"] ¶¶ 5-7 and Comp. Ex. 1 thereto [DE 27-3 through 27-4], incorporated herein by reference; see generally relevant web pages from Defendant's fully interactive,[4] commercial Internet websites and supporting domains[5] operating under the Subject Domain Names [referred to herein as "Defendant's Websites"] attached as Comp. Ex. 2 to the Complaint [DE 1-2 through 1-5], and as Comp. Ex. 1 to the Oka Decl. in Support of Notice of Additional Aliases [DE 27-2], all incorporated herein by reference.)

---

[3] Chanel's Notice of Additional Aliases filed on July 5, 2017, together with the declarations and exhibits filed in support thereof, [DE 27], are incorporated herein by reference.

[4] Defendant also operates websites on which ordering instructions are provided, and websites which host photo albums of counterfeit Chanel branded products that are available for purchase. (See Oka Decl. ¶ 10, n.1; Gaffigan Decl. ¶ 2, n.1; Oka Decl. in Support of Notice of Additional Aliases ¶ 7, n.1.) As such, the web page captures for the Subject Domain Names illustrating the ordering instructions for its customers, are necessarily encompassed in the web page captures of the corresponding photo album style websites for the relevant Subject Domain Names, and are included in Comp. Ex. 2 attached to the Complaint. (See Oka Decl. at n.1; Gaffigan Decl. at n.1; Oka Decl. in Support of Notice of Additional Aliases at n.1 and Comp. Ex. 1 thereto.)

[5] Defendant uses several of its Subject Domain Names to act as supporting domain names to direct consumer traffic to its fully-interactive, commercial Internet websites operating under other Subject Domain Names, from which consumers can complete purchases. Some of the supporting domain names, when accessed directly, appear to be blog style websites; however, a consumer is ultimately redirected to one of the Subject Domain Names when the supporting domains are accessed through a search engine such as Google. Other supporting domains either automatically redirect and forward to a fully-interactive, commercial Internet website operating under one of the Subject Domain Names or redirect a consumer to a fully-interactive, commercial Internet website operating under one of the Subject Domain Names upon clicking a product or link on the website. These redirecting websites are identified as such in Comp. Ex. 2 attached to the Complaint. (See Oka Decl. ¶ 10, n.2; Gaffigan Decl. ¶ 2, n.2; see also Oka Decl. in Support of Notice of Additional Aliases ¶ 7, n.2, and Comp. Ex. 1 thereto.)

Further, as admitted by Defendant through default, at all times relevant, Defendant has had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. (Compl. ¶ 25.) Defendant does not have, nor has it ever had, the right or authority to use the Chanel Marks for any purpose. (See Oka Decl. ¶¶ 9-10, 12; Oka Decl. in Support of Notice of Additional Aliases ¶¶ 6-8.) However, despite its known lack of authority to do so, Defendant has engaged in the activity of promoting and otherwise advertising, selling, offering for sale, and distributing its Counterfeit Goods via its Internet websites and supporting domains operating under the Subject Domain Names.  (See Compl. ¶¶ 7-16, 25-29; see also Oka Decl. ¶¶ 9-12; Oka Decl. in Support of Notice of Additional Aliases ¶¶ 6-8.)

Chanel's evidence, obtained as a result of its investigation of Defendant, clearly demonstrates Defendant is engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeits of the Chanel Marks. Chanel's representative, Ms. Oka, reviewed and visually inspected Defendant's Websites, including web page captures reflecting various products offered for sale bearing the Chanel Marks via Defendant's Internet websites operating under the Subject Domain Names, and determined the products offered for sale were non-genuine, unauthorized versions of Chanel's products. (Oka Decl. ¶¶ 10-12 and Comp. Ex. 1 thereto, summary comparison table illustrating examples of Defendant's infringement of the Chanel Marks [DE 6-2], incorporated herein by reference; Oka Decl. in Support of Notice of Additional Aliases ¶¶ 7-8; see also Defendant's Websites, attached as Comp. Ex. 2 to the Complaint [DE 1-2 through 1-5]; and Comp. Ex. 1 to the Oka Decl. in Support of Notice of Additional Aliases [DE 27-2].)

C.     **Procedural Background.**

On May 1, 2017, Chanel filed its Complaint for Injunctive Relief and Damages against Defendant [DE 1]. On May 2, 2017, Chanel filed its Application for Temporary Restraining Order [DE 6], which the Court granted the same day, and entered an Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order (the "Temporary Restraining Order") [DE 8]. Subsequently, the Court converted the Temporary Restraining Order into a preliminary injunction on May 19, 2017 [DE 19].

On May 16, 2017, Chanel filed its Motion for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Motion for Alternate Service") [DE 14],[6] which the Court granted the same day [DE 15], authorizing Chanel to serve the Summons, Complaint, and all future, pleadings, filings, and discovery in this matter upon Defendant via electronic mail ("e-mail") and via publication by posting copies of the same on the Internet website appearing at the URL, http://servingnotice.com/c0mow3/index.html.

Pursuant to the Court's Order granting Chanel's Motion for Alternate Service, Chanel served Defendant with its Summons and a copy of the Complaint via e-mail and publication service on May 18, 2017. (See Gaffigan Decl. in Support of FDJ ¶ 5; see also Proofs of Service on file with the Court [DE 21, 22].)

The time allowed for Defendant to respond to the Complaint has expired. (Gaffigan Decl. in Support of FDJ ¶ 6.) Defendant has not been granted any extension of time to respond, nor has it served or filed an Answer or other response. (See id. at ¶ 7.) To Chanel's knowledge, Defendant is not an infant or an incompetent person, and upon information and belief, the Servicemembers Civil Relief Act does not apply. (Id. at ¶ 8.) On June 29, 2017, Chanel filed its

---

[6] Chanel's Motion for Alternate Service, and the supporting declarations and exhibits attached thereto, [DE 14], are incorporated herein by reference.

Request for Clerk's Entry of Default [DE 23], and the Clerk subsequently entered default against Defendant on June 30, 2017, for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [DE 24]. (Gaffigan Decl. in Support of FDJ ¶ 9.) Chanel now moves the Court to grant Final Default Judgment against Defendant.

## III.   ARGUMENT

### A.   Default Judgment Should Be Entered Against Defendant.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defendant and venue in this district are proper under 28 U.S.C. § 1391 as Defendant directs business activities toward consumers within this district and causes harm to Chanel's business within this district through the fully interactive, commercial Internet websites and supporting domains operating under the Subject Domain Names. (Compl. ¶¶ 1-3, 7, 11-12, 30.)

#### 1.   Default Judgment is Proper.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. By such a default, all of Chanel's well-pled allegations in the Complaint are deemed admitted. See PetMed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987)). Accordingly, the well-pled factual allegations of Chanel's Complaint will be taken as true. See id. In this case, the Complaint, pleadings, and the declaration filed in support of Chanel's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendant.

### 2.     Factual Allegations Establish Defendant's Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Chanel must demonstrate: "(1) that it had prior rights to the mark at issue, and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Chanel must prove that Defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendant with Chanel, or as to the origin, sponsorship, or approval, of Defendant's goods by Chanel. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test

for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).").

Further, the test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined in § 32(a) of the Lanham Act. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Chanel's Complaint, including specifically those pled in Paragraphs 7-16, 25-33, 35, 38-42, 45-50, 53-55, and 58-60, properly allege the elements for each of the above claims. Moreover, the factual allegations in Chanel's Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendant's liability under each of the claims asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendant.

**B.      Plaintiff's Requested Relief Should Be Granted.**

**1.      Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. See e.g., PetMed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendant's failure to respond or otherwise appear in this action makes it difficult for Chanel to

prevent further infringement absent an injunction.  See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief."). Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendant from continuing to infringe any of Chanel's intellectual property rights, including the Chanel Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, and based upon the issuance of the temporary restraining order and preliminary injunction, Chanel has clearly carried its burden on each of the four factors, warranting permanent injunctive relief, because Defendant has unlawfully used Chanel's goodwill to make a profit. Accordingly, permanent injunction relief is appropriate.

Defendant's actions merit permanent injunctive relief, not only to protect Chanel's reputation, but also to protect consumers from being deceived as to the quality and source of products bearing Chanel's trademarks. The facts alleged in Chanel's Complaint, substantiated by the evidence submitted herewith, shows Defendant is "continuously infringing and inducing others to infringe" the Chanel Marks by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the Chanel Marks. (Compl. ¶ 39; see generally Defendant's Websites, attached as Comp. Ex. 2 to the Complaint [DE 1-2 through 1-5]; and Comp. Ex. 1 to the Oka Decl. in Support of Notice of Additional Aliases [DE 27-2].)

Chanel is clearly suffering, and will continue to suffer, irreparable injury if Defendant's infringing activities are not permanently enjoined. (Oka Decl. ¶ 19; Oka Decl. in Support of Notice of Additional Aliases ¶ 9.) In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any event, Chanel's Complaint alleges that Defendant's unlawful actions have caused Chanel irreparable injury, and will continue to do so if Defendant is not permanently enjoined. (Compl. ¶¶ 32, 35, 43, 51, 56, 61.) Defendant has defaulted upon Chanel's factual allegations in that respect.

Additionally, Chanel has no adequate remedy at law so long as Defendant continues to use the Chanel Marks in connection with the operation of the Internet websites operating under the Subject Domain Names, because Chanel will have no control of the quality of what appears to be its products in the marketplace. (Compl. ¶¶ 34, 41, 51, 56, 61.) An award of monetary damages alone will not cure the injury to Chanel's reputation and goodwill which will result if Defendant's infringing and counterfeiting actions are allowed to continue. Moreover, it can hardly be said that Defendant faces hardship in refraining from its willful infringement of Chanel's trademarks, whereas Chanel faces hardship from loss of sales and its inability to control its reputation. In reality, Defendant has no cognizable hardship, as it will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest in the issuance of a permanent injunction against Defendant in order to prevent consumers from being misled by Defendant's products. See Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (1985)

("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Chanel's property interest in its Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendant through default, (i) the Subject Domain Names, and any other alias domain names are essential components of Defendant's counterfeiting and infringing activities; and (ii) the domain names themselves are the means by which Defendant furthers its counterfeiting and infringement scheme and causes harm to Chanel. (See Compl. ¶ 15.) Pursuant to the injunctive relief entered herein, the Subject Domain Names have been ordered to be temporarily placed on Lock status, and the majority currently resolve or redirect to Chanel's publication website. Once the Lock status is removed, Defendant will be free to resume its counterfeiting and infringing activities. Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Names should be ordered transferred to Chanel's control by Defendant, its registrars, and/or registries. Absent the transfer of the Subject Domain Names, Defendant will remain free to continue infringing Chanel's trademarks with impunity and will continue to benefit from the Internet traffic to its websites built through the unlawful use of the Chanel Marks.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical

Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.  See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context.  See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). Many courts, including this Court, have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[7]

   Defendant has created an Internet-based counterfeiting scheme and is profiting from the deliberate misappropriation of Chanel's rights. Accordingly, the Court should permanently

---

[7] See e.g., Christian Dior Couture, S.A. v. 2012gucci.me, Case No. 17-cv-60172-WPD (S.D. Fla. May 8, 2017) (awarding transfer of domain names at issue as part of grant of permanent injunction); adidas AG v. 2016nmd.com, Case No. 16-cv-62627-WPD (S.D. Fla. May 5, 2017, docketed on May 8, 2017) (same); Gucci America, Inc. v. guccihandbagsoutlet.us, Case No. 16-cv-63031-WPD (S.D. Fla. Apr. 17, 2017) (same); Chanel, Inc. v. chanelplus5.top, Case No. 15-cv-62045-WPD (S.D. Fla. Feb. 24, 2017) (same); Louis Vuitton Malletier, S.A. v. 2016bagilouisvuitton.com, Case No. 16-cv-61867-WPD  (S.D. Fla. Dec. 12, 2016) (same); Chanel, Inc. v. chaneloutlets-sale.com, Case No. 16-cv-60116-WPD (S.D. Fla. Jun. 24, 2016, docketed on Jun. 27, 2016) (same); see also Under Armour, Inc. v. 51nfljersey.com, No. 13-62809-CIV, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (same); adidas AG v. 2013jeremyscottxadidas.com, No. 13-61867-CIV, 2014 WL 799132, at *8 (S.D. Fla. Feb. 28, 2014) (same); Chanel, Inc. v. 7perfecthandbags.com, 12-22057-CIV, 2014 WL 352197, (S.D. Fla. Jan. 31, 2014) (same).

prohibit Defendant from conducting its unlawful activities by transferring the Subject Domain Names to Chanel, where they may be disabled from further use as platforms for the sale of counterfeit goods.

##### C.  Damages as to Count I for Trademark Counterfeiting and Infringement.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Chanel elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. PetMed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); see also PetMed Express, Inc., 336 F. Supp. 2d at

1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. PetMed Express, Inc., 336 F. Supp. 2d at 1220. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See PetMed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The Chanel Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that Defendant offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows its desire and purpose to trade upon Chanel's goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendant intended to cause confusion and benefit from Chanel's reputation, to Chanel's detriment. See PetMed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendant's use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes Defendant intentionally copied the Chanel Marks for the purpose of deriving the benefit of Chanel's world-famous reputation. Moreover, Defendant has intentionally and willfully persisted to engage in its illegal use of the Chanel Marks at issue in this action, without authorization, despite having explicit notice that its conduct constitutes counterfeiting and infringement. (See Certificates of Service on file with the Court [DE 11, 12, 13, 25, 26], incorporated herein by reference; Notice of Email Inquiry Received by Defendant in Connection with Service [DE 18], incorporated herein by reference; see also Oka Decl. in Support of Notice of Additional Aliases ¶¶ 5-7; Gaffigan Decl. in Support of Notice of Additional Aliases ¶¶ 3-7.) In any event, Defendant defaulted on Chanel's allegations of willfulness. (See Compl. ¶ 32; see also Notice of Additional Aliases [DE 27].) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default). As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendant does not continue its intentional and willful counterfeiting activities.

The evidence in this case demonstrates that Defendant promoted, distributed, advertised, offered for sale, and/or sold goods bearing marks which were in fact counterfeits of, at least, one of the Chanel Marks. (Compl. ¶¶ 16, 25-33, 38-40; see also Oka Decl. ¶¶ 4, 9-12; Oka Decl. in Support of Notice of Additional Aliases ¶¶ 6-8; see generally Defendant's Websites, attached as Comp. Ex. 2 to the Complaint [DE 1-2 through 1-5]; and Comp. Ex. 1 to the Oka Decl. in Support of Notice of Additional Aliases [DE 27-2].)[8] Clearly, Defendant has acted willfully and in fact, has continued to engage in its counterfeiting activities despite being enjoined by this Court. (Oka Decl. in Support of Notice of Additional Aliases ¶¶ 4-8 and Comp. Ex. 1 thereto;

---

[8] A chart outlining each Chanel Registration and examples of the infringement thereof is attached as Comp. Ex. 1 to the Oka Decl. [DE 6-2].

Gaffigan Decl. in Support of Notice of Additional Aliases ¶¶ 3-7 and Comp. Ex. 1 thereto.) In view of Defendant's egregious conduct and based on the above considerations, Chanel respectfully suggests the Court award the statutory damage of $2,000,000.00 against Defendant.

This suggested award falls well within the permissible statutory range under 15 U.S.C. § 1117(c)(2), and is appropriate based on Defendant's extensive and willful counterfeiting and should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Chanel's trademarks, compensate Chanel, and punish Defendant, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; PetMed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to, or higher than, Chanel's request herein.[9]

> **D.**     **Damages as to Count II for False Designation of Origin, Count III for Common Law Unfair Competition, and Count IV for Common Law Trademark Infringement.**

Chanel's Complaint also sets forth a cause of action for false designation of origin

---

[9] See, e.g., Christian Dior Couture, S.A. v. 2012gucci.me, Case No. 17-cv-60172-WPD (S.D. Fla. May 8, 2017) (awarding Plaintiff $8,000,000.00 against Defendant); Tiffany (NJ) LLC v. pursevalley.cn, Case No. 15-cv-61346-WPD (S.D. Fla. Mar. 11, 2016) (awarding Plaintiff $9,600,000.00 against Defendant); Chanel, Inc. v chanelplus5.top, Case No. 15-cv-62045-WPD (S.D. Fla. Jan. 6, 2016) (awarding Plaintiff $2,000,000.00 against each Defendant); Michael Kors, L.L.C. v. buybagsstore.com, Case No. 15-cv-61209-WPD (S.D. Fla. Oct. 7, 2015) (awarding Plaintiff $1,000,000.00 against each Defendant). See also Chanel, Inc. v. fakebags.ru, Case No. 16-cv-62897-DPG (S.D. Fla. Feb. 27, 2017) (awarding Plaintiff $2,100,000.00 against Defendant); Chanel, Inc. v. chanelbagsus.com, Case No. 16-cv-61802-RNS (S.D. Fla. Nov. 14, 2016) (awarding Plaintiff $1,000,000.00 against each Defendant); Chanel, Inc. v. shopbuychanel.com, Case No. 14-cv-62755-BB (S.D. Fla. May 29, 2016) (awarding Plaintiff $1,512,000.00 against Defendant); Chanel, Inc. v. 83bab.com, Case No. 14-cv-61002-JAL (S.D. Fla. Oct. 10, 2014) (awarding Plaintiff $2,000,000.00 against each Defendant); Philip Morris USA Inc. v. cheapmarlborocigarettesonline.net, Case No. 12-cv-24046-UU (S.D. Fla. Mar. 18, 2013) (awarding Plaintiff $4,000,000.00 against Defendants).

pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). As to Counts II, III, and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Counts II, III, and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff, Chanel, Inc., respectfully requests the Court enter final default judgment and a permanent injunction against Defendant in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated: July 5, 2017.

Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **s/Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff, CHANEL, INC.

**SCHEDULE "A"**
**SUBJECT DOMAIN NAMES BY NUMBER**

| Number | Subject Domain Name |
|--------|---------------------|
| 1 | 2015chinasale.com |
| 2 | greatmall.eu |
| 3 | jiong0594.com |
| 4 | nikepub.com |
| 5 | topgoodszone.com |
| 6 | uchinasupplier.com |
| 7 | 777topshop.com |
| 8 | futureshoestrading.com |
| 9 | nike86.com |
| 10 | shoesclothes66.com |
| 11 | xintediytrade.com |
| 12 | yangguang1.com |
| 13 | baodao188.com |
| 14 | brtx8399.com |
| 15 | cheap-brand-wholesale.com |
| 16 | cheapsneakers.cn |
| 17 | chinashoeshop.com |
| 18 | downloadfromchina.com |
| 19 | fashionhiphop.net |
| 20 | fashion-luxury-wholesale.com |
| 21 | fashionwholesale.club |
| 22 | gznaky.com |
| 23 | hs266.com |
| 24 | johnwumarket.com |
| 25 | jsl68.com |
| 26 | kp999999.com |
| 27 | lymy48.com |
| 28 | mp8899.com |
| 29 | newmaggiestore.com |
| 30 | nikeclub.cn |
| 31 | pickcool.com |
| 32 | replicas.vip |
| 33 | shoebuy.club |
| 34 | tmyj66.com |
| 35 | utopcub.net |
| 36 | wholesale.pub |
| 37 | wqipidai.com |

| | |
|---|---|
| 38 | xinxinbags.com |
| 39 | yangguangbags008.com |
| 40 | yl0594.com |
| 41 | bagshoeswholesale.com |
| 42 | blingnewstore.com |
| 43 | cheapbestgoodsonline.com |
| 44 | copiesonchina.com |
| 45 | ebaybaidu.com |
| 46 | fashion4luxury.com |
| 47 | hotsell4luxury.com |
| 48 | hs206.com |
| 49 | luxuryfactory.net |
| 50 | mgcrazy.com |
| 51 | mgshops.net |
| 52 | miqifashions.net |
| 53 | newclothes1.com |
| 54 | nike186.com |
| 55 | ourchinasupplier.com |
| 56 | qiqi-fashion.net |
| 57 | qiqi-fashions.com |
| 58 | qiqifashions.net |
| 59 | qiqi-fashions.org |
| 60 | qiqifashions1.com |
| 61 | qiqifashionshop.com |
| 62 | uschinasupplier.com |
| 63 | xinxinbag.com |
| 64 | yangguang008.com |
| 65 | yangguangbags668.com |
| 66 | yangguangfashion008.com |

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 5, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true copy of the foregoing was served this 5th day of July, 2017, upon Defendant via the e-mail addresses at which Defendant was served and via publication by posting a true copy of the same on Plaintiff's Internet website appearing at the URL http://servingnotice.com/c0mow3/index.html.

**<u>s/Stephen M. Gaffigan</u>**
Stephen M. Gaffigan